**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| NATHANIAL E. FREEMAN,<br><br>       Plaintiff,<br><br>   v.<br><br>QUICKEN LOANS, INC.,<br><br>       Defendant. | Case No. 1:18-cv-01052<br><br>Hon. Frederick J. Kapala |

### QUICKEN LOANS INC.'S REPLY IN SUPPORT OF
### MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Stripped of its rhetoric and *ad hominin* attacks on Quicken Loans and its counsel, Plaintiff's Opposition provides this Court with no reason to allow his lawsuit to proceed. That is because there is none. While he is quick to label the Quicken Loans' Motion to Dismiss as "meagre" and "conclusory," Plaintiff nonetheless conceded its merit when he voluntarily dismissed, *with prejudice*, his ICFA claim in Count 2 in response to the Motion. And, after initially attacking the Motion as relying "on clearly inapplicable authority" and suggesting (wrongly) to the Court that Quicken Loans had committed a possible "violation of Red. R. Civ. P. 11(b)(2)" (Dkt. No. 53 at 2), Plaintiff subsequently retracted his accusations (and submitted a revised Opposition (Dkt. No. 58)) after Quicken Loans explained to Plaintiff's counsel that it was, in fact, *Plaintiff*'s reading of the law that was erroneous.

Against this background, Plaintiff's opposition arguments boil down to (a) a quibble with what *Twombly* and *Iqbal* require him to plead to state a claim and (b) an empty plea that this Court allow this lawsuit to continue so that Plaintiff *might find* facts to support it. Plaintiff is wrong that his conclusory assertions and hope to find evidence are somehow sufficient to state a

claim. They are not. Indeed, the well-known *Twombly/Iqbal* pleadings standard forecloses Plaintiff's plea to proceed beyond the pleadings stage based upon little more than bald assertions that Quicken Loans did something wrong (and it did not). Put simply, the remaining claims (Counts 1 and 3) in the Amended Complaint should be dismissed because Plaintiff has failed (again) to sustain his Rule 8 pleadings burden.

I.  **PLAINTIFF'S COMPLAINT FAILS TO STATE A COGNIZABLE TCPA CLAIM AT MULTIPLE LEVELS.**

  A.  **The Amended Complaint Lacks the Requisite Factual Enhancement**.

As explained in Quicken Loans' Motion (at 5), Plaintiff's Amended Complaint fails to state a TCPA cellphone provision claim at even the most basic level because it provides no factual enhancement about the challenged calls. At bottom, Plaintiff's Opposition asks this Court to overlook the absence of any factual enhancement to support his allegations because the federal pleading standards are "liberal." Opp. at 4. But, contrary to Plaintiff's suggestion otherwise, the federal pleading standards are not empty formalities. Supreme Court precedent is unequivocal that a plaintiff must plead factual allegations sufficient to render his claims plausible (as opposed to just possible). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Despite multiple opportunities, Plaintiff has not done that. Instead, the most he has alleged is that he received "at least 14" calls sometime over a 3-year period between "approximately 2015" and "the latter half of 2017." Compl. ¶¶ 8, 16, 19. These vague and general allegations about unidentified calls are insufficient to sustain Plaintiff's Rule 8 pleadings burden because they tell Quicken Loans (and the Court) nothing about the challenged calls sufficient for it to have fair notice of the factual basis (if any) for the claims against it and a fair opportunity to defend.

Plaintiff's vague pleading puts the Amended Complaint squarely on all fours with the complaint and TCPA claim that this Court dismissed in *Hanley*, despite Plaintiff's attempt to

2

distinguish that case. In *Hanley*, this Court dismissed the complaint where plaintiff failed to allege the number of calls the defendant allegedly placed to him, failed to allege when the calls were placed, and omitted any factual enhancement regarding allegations that the plaintiff asked the defendant to stop calling him. *Hanley v. Green Tree Svcing., LLC*, 934 F.Supp.2d 977, 983-84 (N.D. Ill. 2013). The only distinction (albeit immaterial) between the Amended Complaint here and *Hanley* is that Plaintiff identifies the number of calls (14) he is supposedly challenging. But that allegation, standing alone, is not somehow sufficient to move Plaintiff's conclusory allegations across the line from possible to plausible. Nor does Plaintiff ever attempt to explain how it could, given that the other pleadings defects identified by this Court in *Hanley* also infect the Amended Complaint here. Put simply, Plaintiff's allegation that the 14 challenged calls occurred over a 36-month period between "approximately 2015" and the "latter half of 2017," and that he "demanded that [Quicken Loans] stop calling his cellphone" on some unspecified date in an unspecified conversation, are substantively the same as those this Court found insufficient to state a claim in *Hanley*. As such, the same result—dismissal—should attain here.

Plaintiff's reliance on *McCoy v. A-1 Diabetes and Medical Supply Inc.*, compels no different conclusion. In *McCoy*, this Court allowed the complaint to survive dismissal where plaintiff alleged a narrow, but "general time-frame" that the challenged calls occurred over the course of two months, and had explained the nature of the plaintiff's communications with the defendant. 2017 WL 5473733, at *1 (N.D. Ill. Nov. 14, 2017). By contrast, Plaintiff here does not identify when the first challenged call occurred other than to allege that it was "in approximately 2015." Nor does Plaintiff identify when the last challenged call occurred other than to suggest it was sometime in the last six months of 2017. The lack of such basic facts—

presumably known or accessible to Plaintiff—distinguishes this case from *McCoy*. *McCoy*, thus, offers no excuse for Plaintiff's pleading failures.

      **B.**      **Plaintiff's ATDS Allegations Is Deficient.**

In its Motion (at 6-8), Quicken Loans demonstrated that Plaintiff's ATDS allegation did not meet Rule 8's pleadings requirement in light of the D.C. Circuit's recent decision in *ACA International*. In *ACA*, the D.C. Circuit clarified that an ATDS is equipment that must "perform each of two enumerated functions: (i) storing or producing telephone numbers 'using a random or sequential number generator' and (ii) dialing those numbers." *ACA Int'l v. FCC*, 885 F.3d 687, 693 (D.C. Cir. 2018) (quoting 47 U.S.C. § 227(a)(1)); *see also Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 120 (3d Cir. 2018) (same); *King v. Time Warner Cable Inc.*, 894 F.3d 473, 477-78 (2d Cir. 2018) (same). Plaintiff does not dispute the D.C. Circuit's holding that the statutory definition of an ATDS controls. Nor does he dispute that, in *ACA*, the D.C. Circuit rejected historic FCC guidance purporting to expand the statutory ATDS definition as "fail[ing] to satisfy the requirement of reasoned decisionmaking." *ACA*, 885 F.3d at 703. Nonetheless, the only authority Plaintiff cites in his attempt to save the claim is pre-*ACA* caselaw Opp. at 6-8 (citing *Cunningham v. TechStorm, LLC*, 2017 WL 721079, at *3 (N.D. Tex. Feb. 23, 2017); *Loveless v. A1 Solar Power, Inc.*, 2015 U.S. Dist. LEXIS 96429, at *7 (C.D. Cal. July 23, 2015); *Crawford v. Target Corp.*, 2014 U.S. Dist. LEXIS 159203, at *7 (N.D. Tex. Nov. 10, 2014); *Gamboa v. Merrick Bank Corp.*, 2016 U.S. Dist. LEXIS 188589, *17-19 (N.D. Ga. Nov. 30, 2016); *White v. Synchrony Bank*, 2015 U.S. Dist. LEXIS 134629 (M.D. Fla. Oct. 2, 2015); and *Neptune v. Whetstone Partners, LLC*, 34 F. Supp. 2d 1247, 1250 (S.D. Fla. 2014)). That caselaw is no longer good law after *ACA*. *Herrick v. GoDaddy.com LLC*, 312 F.Supp.3d 792, 800 (D. Ariz. 2018); *see also Marks v. Crunch San Diego, LLC*, ---F.3d---, 2018 WL 4495553, *6 (9th Cir.

2018).[1]  Recognizing this, Plaintiff attempts to distinguish Quicken Loans' authorities and assert (without citation to any supporting authority) that he should not have to advance plausible allegations about the ATDS element of his claim without the benefit of discovery.  Plaintiff's arguments and assertions are without merit.[2]

Plaintiff's attempt to distinguish Quicken Loans' ATDS authorities on procedural grounds misses the mark.  He contends that, because *Marshall*, *Herrick*, *Pinkus*, and *Dominguez* were not decided at the pleadings stage, they are somehow not relevant to the ATDS element of his claim.  Opp. at 8.[3]  He is wrong.  These cases all stand for the legal proposition (unremarkable in light of *ACA*) that call equipment is an ATDS only if it meets the statutory definition Congress set forth in Section 227(a)(1).  *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 120 (3d Cir. 2018); *King v. Time Warner Cable Inc.*, 894 F.3d 473, 477-78 (2d Cir. 2018); *Pinkus v. Sirius XM Radio, Inc.*, No. 16-cv-10858, ---F.Supp.3d---, 2018 WL 3586186, at *9 (N.D. Ill. July

---

[1] In *Marks*, the Ninth Circuit concluded (correctly) that the D.C. Circuit's decision in *ACA* invalidated historic FCC guidance on what constitutes an ATDS.  *Marks*, 2018 WL 4495553, *6. The Court then went on to conclude that the statutory ATDS language is ambiguous and set forth its own new definition of the meaning of that language.  Quicken Loans reserves all rights to demonstrate that these aspects of *Marks*, which are not binding upon this Court, were wrongly decided.  That said, the issue is of no import to the resolution of this Motion because Plaintiff has pled no plausible factual allegations that the challenged calls were made with equipment meeting the statutory definition, whether as set forth in the statute itself or as construed by the Ninth Circuit in *Marks*.

[2] Plaintiff's assertion that Quicken Loans has failed to "cite to any of the opinions that stands for this proposition [that he must plead that was called using an ATDS]" is perplexing.  Opp. at 6, n.1.  There is (and can be) no dispute that a call made using an ATDS is an element of a TCPA cellphone provision claim like Plaintiff's here.  *See* 47 U.S.C. § 227(b)(1)(A)(iii); *Johansen v. Vivant, Inc.*, No. 12-cv-7159, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012) (Aspen, J.). And it is black-letter law that plaintiffs must allege facts to support each element of a claim to state a cognizable claim for relief.  *Adams*, 742 F.3d at 728 ("A complaint must allege facts to support a cause of action's basic elements; the plaintiff is required to do at least that much.").

[3] Plaintiff does not attempt to distinguish the Second Circuit's recent decision in *King v. Time Warner Cable Inc.*, 894 F.3d 473, 477-78 (2d Cir. 2018).

5

26, 2018); *Marshall v. CBE Group, Inc.*, No. 16-cv-2406, 2018 WL 1567852, at *4-5 (March 30, 2018); *Herrick*, 312 F.Supp.3d at 799-800. That these cases set forth the current state of the law in the context of summary judgment decisions does not somehow make them irrelevant to assessing what a plaintiff must allege to plead the ATDS element of a cellphone provision claim. Indeed, as the Seventh Circuit has explained, "there's nothing wrong with relying on summary-judgment cases at the pleading stage to explain the substantive legal standards that apply to the case." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014). That is all Quicken Loans has done (properly) here.

Unable to dispute the point or identify any factual allegations in the Amended Complaint pleading that the challenged calls were made using equipment meeting the statutory ATDS definition, Plaintiff argues that three of his allegations are somehow nonetheless sufficient to plead the ATDS element. This argument need not detain this Court long because it relies exclusively upon pre-*ACA* decisions that are no longer good law and cites to allegations that plead nothing about whether an ATDS was used to make the challenged calls.

First, Plaintiff argues that his allegation that he heard a pause when he answered the calls suggests the use of an ATDS and distinguishes this case from *Pinkus* (Compl. ¶ 13; Opp. at 8). This argument is based on pre-*ACA* cases that held such an allegation was sufficient to plead the ATDS element based upon the FCC's now invalidated historic guidance that a pause indicated the use of a predictive dialer, and that all so-called predictive dialers met the ATDS definition. *Herrick*, 312 F.Supp.3d at 800. In *ACA*, however, the D.C. Circuit invalidated that guidance and held that not all predictive dialers qualify as an ATDS. *ACA*, 885 F.3d at 702-703. Plaintiff's "pause" allegation (and the caselaw he cites in support of it) thus does not (and cannot) save his claim.

Next, Plaintiff argues that his allegations that calls continued after he asked that they stop (Compl. ¶ 18 Opp. at 8), and that he received two calls in one day (Compl. ¶ 19; Opp. at 8), are somehow indicative of the use of an ATDS. But Plaintiff fails to explain how either allegation is indicative of the use of an ATDS (as opposed to a traditional phone or smartphone) to make any of the challenged calls (and they are not). Plaintiff pleads nothing about when or how he asked for the calls to stop, or how many of the challenged calls came after that unidentified request. This forecloses the inference Plaintiff invites this Court to draw about the use of ATDS. A single call (or, for that matter, multiple calls) occurring after a do-not-call request pleads nothing about whether the subsequent calls were made using an ATDS. The calls are just as likely to have been manually-dialed by the caller. This is particularly true here, where Plaintiff's only factual allegations are about 14 calls made over a nearly three year period. Such allegations about a call made, on average, every other month does not (and cannot) plead that the calls were made using an ATDS. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (allegations of unlawful conduct are implausible when the conduct is more likely explained by lawful behavior).

The same is true of Plaintiff's purported allegation about two calls in a single day. Such an allegation does not (and cannot) plead that the calls were made using an ATDS. Common sense and everyday experience teaches that callers can and do make multiple calls to the same number in a given day by manually dialing the numbers (and without using an ATDS).[4]

Perhaps recognizing the patent defects in his ATDS allegations, Plaintiff invites this Court to ignore them because he purportedly cannot know "the precise nature of the system" used to call him. This Court should decline that invitation. At the outset, Plaintiff misstates

---

[4] If this lawsuit is allowed to continue (and it should not), Quicken Loans will demonstrate that any calls placed to Plaintiff were made in response to a request for and consent to receive such calls.

7

Quicken Loans' argument. Nowhere did Quicken Loans argue that Plaintiff must plead "the precise nature of the system" to state the ATDS element of his claim. Instead, consistent with the *Twombly/Iqbal* pleadings standard, Quicken Loans argued only that Plaintiff must allege plausible factual allegations that the challenged calls were made using equipment performing the two functions identified by the D.C. Circuit in *ACA*. Motion at 6-8. In any event, Plaintiff's argument that he should be relieved of his pleadings burden as to the ATDS element has been considered and rejected by this Court and numerous others. *See, e.g., Martin v. Direct Wines, Inc.*, No. 15-cv-757, 2015 WL 4148704, at *2 (N.D. Ill. July 9, 2015); *Jones v. FMA Alliance Ltd.*, 978 F.Supp.2d 84, 86–87 (D. Mass. 2013). This Court should reject that argument again here.

### C. Plaintiff's Claim that He Did Not Consent is Implausible.

Quicken Loans demonstrated (Mot. at 8) that Plaintiff's allegation that he never consented to the challenged calls was implausible in the face of his allegation that he "may have" consented. Plaintiff makes no effort to unwind this contradiction. Instead, Plaintiff doubles down, claiming in one breath that he "explicitly" alleged he never consented and stating in the next that he revoked any consent he might have given. Opp. at 10. This, of course, is precisely the problem—the Court need not accept his allegation of a lack of consent in the face of his allegation that he "may have" consented. If the case proceeds (and it should not), Plaintiff will be unable to argue, and a fact-finder will be unable to accept, his assertion that he did not consent given his admission in the very first pleading in this case that he "may have" consented. And the doubt he puts forward regarding his consent is not cured by his allegation that he revoked any such consent. That is simply the tail wagging the dog. Necessarily, there can be no revocation of consent unless Plaintiff had consented in the first instance. While Plaintiff may regret the

8

choices made in his pleading, the manner in which he attempts to claim revocation of consent renders his "explicit" claim that he never consented implausible. This implausibility is confirmed by his failure to plead any concrete details at all about the alleged revocation—such as what he said or when he said it.

Plaintiff is also wrong that this discrepancy is immaterial to his claim. This is because plaintiffs who never consent are differently situated than those who do consent but later revoke. As explained in Quicken Loans' Motion, a revocation claim falls under 47 U.S.C. § 227(c) and the FCC's do-not-call regulations. *See* 47 C.F.R. § 64.1200(d)(3); 2003 FCC Order at 14069, ¶ 94. Under those regulations, a claim of revocation after consent must advance under Section 64.1200(d) and the safe harbor provided therein, and not, as Plaintiff has alleged here, under Section 227(b)(1)(A)(iii). *Nece v. Quicken Loans Inc.*, No. 2018, WL 1326885, at *6 (M.D. Fla. March 15, 2018) (a do-not-call request does not require an immediate cessation of calls because FCC regulations provide a reasonable time to recognize such a request). While in just a single paragraph Plaintiff casts Quicken Loans' explanation of this distinction as part and parcel of a "comedy of errors," "untenable," "baseless and erroneous," and again as "baseless" (Opp. at 11), Plaintiff's amended Opposition conceded it was he who was in error in his misunderstanding of the application of Section 64.1200(d) to cell phone numbers as is plainly stated in Section 64.1200(e).

## II. PLAINTIFF LACKS STANDING UNDER THE ITSA.

In its Motion (at 9),Quicken Loans demonstrated that the Illinois General Assembly limited the reach of the ITSA to "customers." *See also* 815 ILCS 413/25(d). Unable to refute this, Plaintiff attempts misdirection by arguing that Quicken Loans has no authority to support its

position and by making a policy argument that the word "customer" should be broadly interpreted. He is wrong on both counts.

Plaintiff's suggestion that Quicken Loans failed to provide authority for its position is flat wrong. Quicken Loans' authority is the statute itself. Rather than address the statutory text, Plaintiff ignores it in favor of citation to a single case (*Battle v. Bridgepoint*, 2017 U.S. Dist. LEXIS 26576 (N.D. Ill. Feb. 27, 2017). But *Battle* says nothing about standing to sue under the ITSA. In fact, the plaintiff in *Battle* did not even make an ITSA claim. *See Battle*, 2017 U.S. Dist. LEXIS 26576 at *1. With no ITSA claim at issue, *Battle* is unsurprisingly silent on the meaning of the word "customer" and sheds no light on the standing issue raised in this case. It is thus Plaintiff himself who offers (and has) no authority to support his argument.

It is black-letter law that statutory interpretation must begin with the language of the statute at issue. *Hughey v. U.S.*, 495 U.S. 411, 415 (1990); *U.S. v. Marcotte*, 835 F.3d 652, 656 (7th Cir. 2016). Here, the statute unequivocally limits its reach to "customers." 815 ILCS 413/25(d). This Court need look no further than the text of the statute itself to confirm that Plaintiff must be a "customer" in order to have standing. *Marcotte*, 835 F.3d at 656 ("When a statute is unambiguous, our inquiry 'starts and stops' with the text."). Indisputably and by common parlance, a customer is a person that purchases goods or services from a provider of such goods or services. Plaintiff is no such "customer" because he fails to allege any purchase from Quicken Loans at all. Even if there were ambiguity around this understanding (and there is not), the legislature's definition of that term elsewhere in the Illinois Code and the dictionary definition of the term both confirm this understanding. As Quicken Loans explained in the Motion (at 9-10), both of these interpretive tools confirm that "customer" means one who makes a purchase.

Plaintiff's only response to these tools of interpretation is to urge the Court to adopt a broad understanding of what the General Assembly must have meant by using the word "customer." Plaintiff advances his position by way of a fabricated hypothetical that a shop owner would consider anyone that enters his store to be a customer. Opp. at 13 n. 5. But Plaintiff's hypothetical is flawed. Considering every entrant to a store as a customer—such as a person that attempts to use a restroom at the local coffee shop without making a purchase—stretches the word too far and would render virtually anyone a "customer" under the statute, rendering (improperly) the term superfluous. *See in re Hernandez*, 2018 WL 1469000, at *3 (N.D. Ill. March 26, 2018) (quoting *Sylvester v. Indus. Comm'n*, 756 N.E.2d 822, 827 (Ill. 2001)) (each term in a statute must be given meaning). Plaintiff's hypothetical also says nothing about what the Illinois legislature intended in its use of the word "customer."

## III. PLAINTIFF HAS PRESENTED NO BASIS TO PERMIT AMENDMENT.

As an afterthought, Plaintiff asks for leave for a third chance to put forward a plausible complaint in the event this Court dismisses his Amended Complaint. But there is no good cause to allow further amendment and Plaintiff identifies none. Allowing yet another complaint would, however, prejudice Quicken Loans. This is now Quicken Loans' third motion to dismiss, and third time Plaintiff has been confronted with his pleading failures. Dkt. Nos. 16, 30, and 48. Although he has made changes to his complaint, none of those changes (aside from dismissing his ICFA claim with prejudice) has addressed his pleading failures. And, Plaintiff has said nothing in his Opposition that suggests he can address those failures. His request for leave should be denied.

## CONCLUSION

For the reasons stated above and in the Motion to Dismiss, Quicken Loans respectfully submits that this Court should grant the Motion and dismiss the Amended Complaint with prejudice.

Dated: September 25, 2018            Respectfully Submitted,

By:    */s/ J. Michael Hearon*
Brooks R. Brown (Bar No. 90785875)
W. Kyle Tayman (*pro hac vice*)
GOODWIN PROCTER LLP
901 New York Ave., N.W.
Washington D.C. 20001
Tel.: (202) 346-4000
Fax: (202) 346-4444
bbrown@goodwinlaw.com
ktayman@goodwinlaw.com

J. Michael Hearon (ARDC# 6307485)
Quarles & Brady LLP
300 North LaSalle Street, Suite 4000
Chicago, IL 60654-3406
(312) 715-5000 | (312) 715-5155 (fax)
michael.hearon@quarles.com

*Attorneys for Quicken Loans Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2018, I caused a true and correct copy of the foregoing to be served upon counsel of record as of this date by electronic filing.

*/s/ J. Michael Hearon*
J. Michael Hearon