## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Freeman, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No: 18 C 1052 |
| | ) | |
| Quicken Loans, Inc., | ) | |
| | ) | |
| *Defendant*. | ) | Judge Frederick J. Kapala |

## ORDER

Defendant's motion to dismiss [47] is granted in part and denied in part. The motion is denied as to Count I. Count III is dismissed without prejudice. Plaintiff's unopposed motion to voluntarily dismiss Count II with prejudice [51] is granted.

## STATEMENT

Plaintiff, Nathaniel E. Freeman, brings a complaint against defendant, Quicken Loans, Inc., alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 201 et seq., and the Illinois Telephone Solicitations Act ("ITSA"), 815 ILCS 413/1 et seq. For the reasons stated below, defendant's motion to dismiss is granted in part and denied in part.

### I. BACKGROUND

The following facts are drawn from the allegations in the first amended complaint ("FAC"). Because this case comes before the court pursuant to a motion to dismiss, the court accepts all allegations in the FAC as true and draws all reasonable inferences in favor of plaintiff.

Plaintiff is an Illinois resident. Sometime in 2015, defendant, a Michigan-incorporated online mortgage lender, began calling plaintiff's cellular phone to solicit his business to take out a loan. When plaintiff answered the phone, he experienced a noticeable pause, lasting several seconds, before a live representative answered. Plaintiff informed the representative that he was not interested in a loan. Plaintiff also informed the representative that he no longer wanted to receive calls from defendant. Nevertheless, plaintiff received at least 13 additional calls from defendant on the same cellular phone. Some of these calls occurred on the same day, including on June 24, 2017, when the calls were placed within seconds of one another. Plaintiff alleges that he never consented to receive any of these calls and that "[a]ny consent Plaintiff may have given to Defendant was explicitly revoked by his demands that Defendant cease contacting him."

Plaintiff filed his FAC bringing claims under the TCPA (Count I) and ITSA (Count III). Plaintiff also brought a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act (Count II), but the court now grants plaintiff's unopposed motion to voluntarily dismiss Count

II with prejudice. Defendant moves to dismiss Counts I and III.

## A. TCPA

To state a claim under the TCPA, a plaintiff must allege that a defendant (1) called a cellular telephone number, (2) used an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice to do so, and (3) lacked the plaintiff's prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii); Blow v. Bijora, Inc., 855 F.3d 793, 798 (7th Cir. 2017). The parties do not dispute the first prong, as plaintiff has alleged that defendant called his cellular phone. Instead, the parties devote the majority of their arguments to the second prong. The court will address these arguments below and will also briefly assess the parties' arguments concerning the third prong.

Under the TCPA, an ATDS is "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Defendant contends that the D.C. Circuit's opinion in ACA International v. FCC, 885 F.3d 687 (D.C. Cir. 2018), requires dismissal of plaintiff's TCPA claim because plaintiff has not plausibly alleged that defendant used an ATDS to call him.[1] In ACA International, the D.C. Circuit rejected FCC guidance issued in 2015 (which had seemingly expanded the types of devices that may fall under the definition of an ATDS) because the FCC had offered impermissibly contradictory guidance regarding the types of devices that may constitute an ATDS under § 227. Id. at 702-03. Courts in this district have interpreted the pertinent effect of ACA International to be that an ATDS "must have the capacity to generate telephone phone numbers, either randomly or sequentially, and then to dial those numbers." Pinkus v. Sirius XM Radio, Inc., 319 F. Supp. 3d 927, 938 (N.D. Ill. 2018). Other circuits have agreed with this interpretation. See, e.g., King v. Time Warner Cable Inc., 894 F.3d 473, 477-78 (2d Cir. 2018); Dominguez v. Yahoo, Inc., 894 F.3d 116, 120 (3d Cir. 2018).

In support of his argument that defendant used an ATDS, plaintiff alleges: (1) "When Plaintiff answers Defendant's phone calls, he experiences a noticeable pause, lasting several seconds in length, before a live representative gets on the line," FAC ¶ 13; (2) "Upon speaking with one of Defendant's representatives, Plaintiff discovered that [the representative] was trying to solicit [Plaintiff] to sign up for a loan," id. ¶ 14; (3) "Despite Plaintiff's demands, Defendant continued to regularly call his cellular phone attempting to solicit his business well into the latter half of 2017," id. ¶ 16; and (4) "Defendant has also called Plaintiff's cellular phone multiple times during the same day even after being asked to stop calling. For example, on June 24, 2017, Plaintiff received two calls from Defendant that were placed within seconds of one another," id. ¶¶ 17-18; id. ¶ 26. Defendant contends that under ACA International these are not sufficient indicia of the use of an ATDS.

Defendant may ultimately prove its contention to be true. See ACA Int'l, 885 F.3d at 703 (finding that not all predictive dialing systems fit the definition of an ATDS). But even in the post-ACA International regime, district courts in this circuit and around the country have routinely rejected motions to dismiss TCPA claims as long as a plaintiff does not "simply parrot the language

---

[1] The parties agree that ACA International is binding on this court. Pinkus v. Sirius XM Radio, Inc., 319 F. Supp. 3d 927, 932 (N.D. Ill. 2018).

2

of the TCPA to allege that a defendant used an ATDS." Hayes v. Receivables Performance Mgmt., 2018 WL 4616309, at *7 (N.D. Ill. Sept. 26, 2018). "Rather . . . a plaintiff may state a claim by alleging facts about the call(s) she received that led her to believe a defendant used an ATDS." Id. To require anything more would impose an unreasonable pleading requirement on plaintiffs alleging TCPA claims. Only after the benefit of discovery could a plaintiff not steeped in the technical intricacies of autodialing systems determine whether calls he received came from an ATDS. Id. at *7 n.5 ("[T]he definition of ATDS is not at issue here. The only issue is whether Plaintiff has pled facts sufficient to support a reasonable inference that an ATDS was used. He has. After Plaintiff has had the benefit of discovery regarding the kind of system Defendant used to place the calls, Defendant may renew its challenge."); Asher v. Quicken Loans, Inc., No. 2:17-CV-1203, 2019 WL 131854, at *3 (D. Utah Jan. 8, 2019) ("If the presence of specific facts to establish the technical specifications of an ATDS were an absolute requirement at the pleading stage, then, so long as offenders sufficiently shielded the precise capabilities of their equipment from the general public, the TCPA could be violated with impunity."); Wilson v. Quest Diagnostics Inc., No. CV 2:18-11960, 2018 WL 6600096, at *4 (D.N.J. Dec. 17, 2018) ("With the benefit of discovery as to the type of equipment Quest used and the nature and extent of Quest's contacts with Plaintiff, the case will be well postured to assess Quest's conduct under the TCPA."); Washington v. Ross Med. Educ. Ctr., No. 3:18CV139-PPS/MGG, 2018 WL 2336073, at *2 (N.D. Ind. May 22, 2018) (recognizing the "difficulty a plaintiff faces in knowing the type of calling system used without the benefit of discovery").

Plaintiff's allegations contain the typical indicia of an ATDS that courts have relied on in rejecting motions to dismiss TCPA claims after ACA International. See, e.g., Hayes, 2018 WL 4616309, at *7 ("Plaintiff alleges both that he has experienced the distinctive 'click and pause' after answering calls from Defendant, and that on other occasions he experienced 'dead air' and received no response whatsoever when he answered Defendant's calls." (citation omitted)); Asher, 2019 WL 131854, at *3 (alleging a pause before hearing a live representative); Wilson, 2018 WL 6600096, at *4 (alleging a pause and that defendant called to "collect a debt owed by someone other than Plaintiff"); Zemel v. CSC Holdings LLC, No. CV 18-2340-BRM-DEA, 2018 WL 6242484, at *4 (D.N.J. Nov. 29, 2018) (in the context of text messages, finding that the mere allegation of the presence of a "short code" in unsolicited received text messages "more than satisfies [the plaintiff's] burden"); Maes v. Charter Commc'n, 18-cv-124-jdp, 2018 WL 5619199, at *5 (W.D. Wis. Oct. 30, 2018) (alleging that the defendant "called his cell phone multiple times, after he explicitly told [the defendant] not to call him. Each time [the plaintiff] answered, he heard a period of silence before he was connected with [the defendant's representative]"); Washington, 2018 WL 2336073, at *1 (alleging a "brief pause," solicitation of enrollment in the defendant's programs, presence of call center background noise, and frequency of calls persisting after the plaintiff requested that the calls stop). Accordingly, the court disagrees with defendant's assertion that plaintiff must allege anything more specific about defendant's manner of calling him than he has in order to plausibly allege that defendant used an ATDS. At the Rule 12 stage, plaintiff's allegations at least bridge the divide between "possible" and "plausible." Id. at *2 (quoting Cunningham v. TechStorm, LLC, No. 3:16-CV-2879-M, 2017 WL 721079, at *3 (N.D. Tex. Feb. 23, 2017)) ("Plaintiff's description of the calls as including dead-air time is sufficient to establish use of an automatic telephone dialing system for purposes of Rule 12(b)(6) analysis.").

Finally, moving to the third prong, defendant also argues that plaintiff admitted to providing "prior express consent" when plaintiff alleged in the FAC that "[a]ny consent Plaintiff may have given to Defendant was explicitly revoked by his demands that Defendant cease contacting him." FAC ¶ 27. But aside from the fact that plaintiff alleged in the same paragraph that "Plaintiff did not consent to receive the subject phone calls from Defendant," the court does not find that plaintiff's conditional allegation constitutes a concession on this point. The TCPA prohibits calls using an ATDS without "the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A) (emphasis added). Plaintiff has not alleged that he consented to receive calls from defendant (indeed, just the opposite), let alone alleging that he did so expressly. Thus, the court rejects defendant's contention that plaintiff conceded that he provided express consent, and finds that plaintiff has stated a TCPA claim.

## B. ITSA

Plaintiff also brings a claim under the ITSA. The ITSA requires that a "live operator soliciting the sale of goods or services" identify themselves, receive consent from "the person called" to be solicited, take all steps necessary to remove the person's name and telephone number from their contact list if that person so requests, and not call that person again. 815 ILCS 413/15(b). The statute goes on to state that "[a]ny customer injured by a violation of this Act may bring an action for the recovery of damages." Id. 413/25(d). The question presented by the parties is what the Illinois General Assembly meant by "customer" and whether the General Assembly meant for any aggrieved person to have a private right of action or only persons who have had business dealings with the calling party prior to the placement of a call.

When engaging in statutory construction, the court must "first and foremost [ ] give words their plain meaning unless doing so would frustrate the overall purpose of the statutory scheme, lead to absurd results, or contravene clearly expressed legislative intent." United States v. Vallery, 437 F.3d 626, 630 (7th Cir. 2006). Only "[w]hen the plain meaning of a statutory term is unclear" can "outside considerations [ ] be used in an attempt to glean the legislative intent behind the use of the term." Emerg. Servs. Billing Corp., Inc. v. Allstate Ins. Co., 668 F.3d 459, 465 (7th Cir. 2012). Moreover, "[i]t is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." Marquez v. Weinstein, Pinson & Riley, P.S., 836 F.3d 808, 811 (7th Cir. 2016).

Looking at the plain language of "customer," the court turns to dictionary definitions in order to construe the word "in accordance with its ordinary meaning." Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 553 (2014). In doing so, the plain language of "customer" seems clear on its face: the word means "one that purchases a commodity or service." "customer," Merriam-Webster Online Dictionary, 2019, https://www.merriam-webster.com/dictionary/customer (Feb. 20, 2019). The definition clearly does not mean one who is solicited without having ever made a purchase from the solicitor. Just because a seller reaches out to someone that may be a potential customer does not in fact make that someone a customer.

Moreover, a contrary interpretation of the Assembly's use of the word "customer"—to provide a private cause of action to any person subjected to unwanted solicitation telephone calls—would appear to render the term "superfluous, void, or insignificant." The term "customer"

4

only appears once in the ITSA. On the other hand, § 25(e) grants the Attorney General the right to enforce violations of the ITSA on behalf of "<u>persons</u> who incurred actual damages," 815 ILCS 413/25(e) (emphasis added), which appears to be a reference to § 15(b)'s use of the words "the person[s] called" when describing parties injured by violations of the ITSA. The court must assume that if the Illinois General Assembly meant to provide a private right of action in § 25(d) to <u>any</u> person injured by violations of the ITSA that it would have used the word "persons" as it did in § 25(e) and in § 15(b). Therefore, guided by the plain meaning of the word "customer" and its context within the statute, the court finds that the word "customer" does not include a person who has not sought to purchase anything from a seller.

Applying this interpretation, plaintiff has not alleged any facts which would give him a private right of action as a customer. Plaintiff has not alleged that he had made any purchases from defendant at any time. Thus, plaintiff does not have standing to bring his ITSA claim. As plaintiff did not plead his ITSA claim in his first complaint, the court grants plaintiffs leave to amend his complaint if plaintiff can plausibly allege that he was a "customer" and can do so consistent with his Rule 11 obligations.

### III. CONCLUSION

For the reasons stated above, defendant's motion to dismiss is granted in part and denied in part. The motion is denied as to Count I. Count II is dismissed with prejudice. Count III is dismissed without prejudice.

Date: 2/26/2019                                                 ENTER:

                                                                              _____

                                                                              FREDERICK J. KAPALA

                                                                              District Judge